IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:  CASE No. 17-23426-PGH

ROBERT MATTHEWS  Chapter 11

Debtor
_____/

### EB-5 CREDITORS' MOTION TO WITHDRAW REFERENCE TO THE BANKRUPTCY COURT FOR ADVERSARY COMPLAINT [DE 93] AND RELATED MATTERS

Creditors, LAN LI, YING TAN, TAO XIONG, JUNQIANG FENG, RAN CHEN, XIANG SHU, HAO LOU, XIANG CHUNHUA, KUANG YAOPING, BEI ZHU, QIONG DENG, QIONGFANG ZHU, ZHILING GAN, CUILIAN LI, YULONG TANG, LILI ZHANG, SHUANGYUN WANG, WENHAO ZHANG, SHA SHI, LIYAN FENG, SHAOQING ZENG, MIN CUI, RUJI LI, QINGYUN YU, LING LI, YINGJUN YANG, BAOPING LIU, DAQIN WENG, XIAOPING ZHANG, SHAOPING HUANG, YI ZHAO, CHANGYUE LIU, YAJUN KANG, CHENGYU GU, YAN CHEN, DONGSHENG ZHU, RUJING WEI, ZHAOHUI LI, JUEWEI ZHOU, MIN LI, CHUNNING YE, HONGRU PAN, FENG GUO, ZHENG YU, TINGTING SUN, XIAO SUN, YAWEN LI, TONGHUI LUAN, LI ZHANG, YUANBO WANG, SHU JIANG, YING FEI, LI DONGSHENG, TANG CHEOK FAI, XIAONAN WANG, MOHAMMAD ZARGAR, SHAHRIAR EBRAHIMIAN, REZA SIAMAK NIA, SARA SALEHIN, SANAZ SALEHIN, ALI ADAMPEYRA, MOHAMMADREZA SEDAGHAT, and HALIL ERSEVEN (the "Movants"), move the Court pursuant to 28 U.S.C. §157(d), Federal Rule of Bankruptcy Procedure 5011, and Local Rule 5011-1, to withdraw the automatic reference to the United States Bankruptcy Court for the Southern District of Florida

(the "Bankruptcy Court") of the listed claims of Movants in this case and the adversary proceeding in this case [DE 93, Case No. 18-01046] to challenge the dischargeability of those claims in deference to the adjudication of the claims pending in the United States District Court for the Southern District of Florida in Case No. 9:16-cv-81871-KAM between Movants and multiple defendants, including the Debtor, and say:

## INTRODUCTION

Movants are victims of a $50,000,000 fraud, theft, and conspiracy, in which a web of individuals, primarily based in Palm Beach County, Florida, and including the Debtor, preyed on foreign nationals, including the Movants, desirous of obtaining visas allowing them to leave foreign countries, such as China, Iran and Turkey to provide their families with the opportunity for a better life in the United States through the United States Customs and Immigration Service's ("USCIS") EB-5 program. Claims to redress those frauds, thefts and conspiracy are now pending in the United States District Court for the Southern District of Florida in Case No. 9:16-cv-81871-KAM (the "Civil Action") in which all 63 of the Movants and 29 defendants, including the Debtor, his wife and an entity listed on the Debtor's Amended Schedules as 99%-owned by the Debtor and his wife, are parties.

As alleged in the Amended Complaint in the Civil Action, the defendants, including the Debtor, conspired to fraudulently induce Movants each to invest $500,000, plus a $40,000-$60,000 "administrative fee," claiming that the investment would qualify them under the EB-5 program administered by the USCIS to obtain visas allowing them to immigrate to the United States. The investment that the defendants were using in their fraud was a purported Palm Beach real estate project known as the "Palm House Hotel" which, in reality, was nothing more than a façade pursuant to which Movants' funds were stolen and distributed among the conspirators. The Amended Complaint (27 counts, 103 pages, 547 paragraphs) with Exhibits (359 pages) is

voluminous, but can be viewed in the PACER function of the United States District Court for the Southern District of Florida CMECF system for Case No. 9:16-cv-81871-KAM at DE-181 and as an Exhibit to the Adversary Complaint to Determine Nondischargeability of Debts, DE 93, as to which it is sought to have the reference removed. All of the defendants in the Civil Action have fully pleaded and the case is eligible to be set for trial.

Only 17 of the 27 counts of the Amended Complaint in the Civil Action name the Debtor, individually, as a defendant, but the counts are interrelated and the factual and legal issues are inextricably intertwined. It would be difficult, if not impossible, to continue to prosecute the claims against the other defendants without trying all the same issues and claims in this case. This is because the Debtor was one of two masterminds behind the fraud and his actions either directed or influenced the fraudulent actions of all of the other defendants in the Civil Action. Moreover, it would be a waste of the resources of this Court to adjudicate claims that will necessarily be adjudicated by the district court in adjudicating the claims of the other 28 alleged conspirators.

The 63 Movants each advanced $500,000, plus an administrative fee ranging from $40,000 to $60,000 to participate in this EB-5 project. Their investments were to be held in escrow until their individual I-526 immigration petitions ("I-526s") were granted. I-526s are the initial petitions filed by each investor with the USCIS by which he or she seeks the approval of a conditional EB-5 visa. The approval of the I-526s is the critical first step to obtaining a permanent visa under the program. The money was to be returned in full to any Movant whose individual I-526 was denied. Conversely, as I-526s were granted for any Movant (and only after the I-526s were granted), that Movant's funds were to be made available to fund the Palm House Hotel project. Movants were told that this would only happen for any Movant after the

developer's invested capital and an alleged preexisting bank loan had been used up. The developer of the Palm House Hotel was the Debtor, who was represented to be a "famous" American real estate developer who had himself invested $22 million in the project. All of the I-526s were denied. None of the Movants' money was returned. Instead, as Movants later discovered, the money was not even placed in a real escrow account. Instead, a fake escrow account was created, the Movants' money was placed into it and was disbursed almost immediately after it was received, with the bulk of the money dissipated by the defendants, including the Debtor.

Robert Matthews, a married man, filed this case individually on November 6, 2017. The Notice of Chapter 11 Bankruptcy Case [DE 16] was filed on November 14, 2017, and set the §341 First Meeting of Creditors for December 8, 2017. The deadline to object to discharge or to challenge whether certain debts are dischargeable was February 6, 2018. The deadline for filing proofs of claim is March 8, 2018.

All of the Movants' claims are listed on [DE 22], pp. 20 et seq (Official Form 106E/F, pp. 2 et seq) filed by the Debtor in this case. They can be found under the subheading "Part 2, List All of Your NONPRIORITY Unsecured Claims." Each such claim is listed as unknown in amount as well as contingent, unliquidated and disputed. Each is also specified as grounded upon "Alleged securities fraud." The District Court will be adjudicating the validity, amount and legal basis of each claim in the aforementioned Civil Action in the United States District Court, Southern District of Florida.

**ARGUMENT**

28 U.S.C. §157(d) provides, in pertinent part:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party,

4

for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

### A. Mandatory Withdrawal

There are basically two different approaches used in determining whether withdrawal is mandatory. *In re American Body Armor & Equip., Inc.*, 155 B.R. 588, 590 (M.D. Fla. 1993). First, the "literal theory" advocates reading the statute literally. *Id*. Consequently, the district court must withdraw the reference if the proceeding requires consideration of both title 11 and "other laws of the United States regulating organizations or activities affecting interstate commerce." *Id*. Withdrawal prevails "regardless of the substantiality of the legal questions presented." *Id*. Without examining the non-bankruptcy code issues, however, section 157(d) may be used as an "escape hatch" for matters Congress meant to be referred to the bankruptcy courts. *Id*. Recognizing the "escape hatch" argument, the second approach considers the magnitude of the effect of non-bankruptcy code federal law on the proceeding. To withstand scrutiny under the second approach, the federal issues raised must warrant "substantial and material consideration." *Id*.

Under either approach, given the complexity of Movants' claims and the need to resort to substantial and material consideration of non-bankruptcy law to resolve them, mandatory withdrawal of the reference is warranted. As noted above, Movants have filed an Amended Complaint in the Civil Action, which contains 27 counts against 29 defendants. Only 17 of the 27 counts of the Amended Complaint in the Civil Action name the Debtor, individually, as a defendant, but the counts are interrelated and the factual and legal issues are inextricably intertwined. The gravamen of the Civil Action is securities fraud relating to offerings made to Chinese, Iranian, and Turkish Victims. The resolution of Movants' claims and the dozens of

defenses raised by Debtor and his co-conspirators will require substantial and material consideration of the federal securities laws. Without withdrawal of the reference, the Bankruptcy Court would be required to engage in significant interpretation, and decide myriad questions of federal securities law. The reference should be withdrawn because resolution of the proceeding requires substantial and material consideration of the federal securities laws.

### B. Permissive Withdrawal

Alternatively, permissive withdrawal of the reference is warranted. Permissive withdrawal is within the discretion of the district court. *See*, *e.g.*, *In re Tucker*, 2012 WL 4090677 (Bankr. S.D. Fla. Sept. 17, 2012) (citation omitted). The Eleventh Circuit has suggested that certain factors be considered when determining what constitutes "cause": (1) advancing uniformity in the administration of bankruptcy law; (2) prevention of forum shopping; (3) conservation of the parties' resources; and (4) facilitation of the bankruptcy process. *Id*. (citation omitted). Other factors considered by the courts include (1) whether the claim is core or non-core; (2) efficient use of judicial resources; (3) a jury demand; and (4) prevention of delay. *Id*. (citation omitted).

The aforementioned factors weight in favor of granting the instant Motion. First, the claims at issue are non-core claims. The core/non-core dichotomy delineates proceedings between those arising under Title 11 and all other claims. "Core proceedings" encompass those proceedings that would not exist at law in the absence of the Bankruptcy Code. *See*, *e.g.*, *In re Certified HR Servs. Co.*, 2008 WL 9424996, at *3 (S.D. Fla. May 30, 2008). Movants' claims are rooted in state law and the federal securities laws, and do not arise from Title 11; they are, therefore, non-core proceedings.

Second, withdrawal of the Reference will conserve both judicial and the parties' resources. The thrust of the Court's inquiry under this element is whether withdrawal of the reference will prevent the parties and the court from expending unnecessary resources in disposing of this action. When a district court reviews a bankruptcy court's decision in a core-proceeding, it applies traditional appellate review to its findings. 28 U.S.C. § 158(a); Fed. R. Bank. P. 8013. However, when the district court reviews a bankruptcy court's decision in a non-core proceeding, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court for a de novo review. 28 U.S.C. § 157(c)(1); Fed. R. Bank. P. 9033(d). This creates a two-step process that, if resolved in the district court in the first instance, would be reduced to a one-step process. Further, this two-step process would add to the resources already expended by the District Court in analyzing and presiding over the same claims against Debtor's co-conspirators in the Civil Action. Importantly, Debtor has already consented to lifting the bankruptcy stay and allowing Movants to prosecute the Civil Action. [DE 81, ¶ 3]. By withdrawing the reference and allowing the parties to litigate all matters in the District Court, the Bankruptcy Court is able to conserve scarce resources and the district court can ensure that it does not duplicate efforts already expended by the Bankruptcy Court.

Third, withdrawal of the Reference will advance uniformity in the administration of bankruptcy law and the facilitation of the bankruptcy process. The judgment in the Civil Action would resolve the issues of the validity and amount of all of Movants' claims against the Debtor, as well as their dischargeability. The Debtor is allegedly liable to Movants for conversion of over $30 million of their money[1] and damaging them through fraud in the inducement of the sale of investment contracts, violation of the Florida Blue Sky Law, and violation of Sections 10(b) and

---

[1] Nondischargeable under 11 USC §523(a)(2)(A) and (a)(4).

7

20 of the Securities Exchange Act.[2] While the Debtor, as the developer of the Palm House Hotel, is a central figure in the Civil Action, there are 28 other defendants. And Movants' claims against Debtor involve the same facts and legal theories that must be litigated against the other defendants in the Civil Action. If the District Court denies the instant Motion, and allows the bankruptcy court to adjudicate Movants' claims against Debtor and the dischargeability of same, the parties could be exposed to inconsistent factual and legal findings in the Civil Action. Specifically, the Bankruptcy Court would be required to make factual and securities laws findings in support of its rulings on Movant's claims and dischargeability based on the novel facts and circumstances presented. To avoid this, the Court should withdraw the entire reference, which will allow the District Court to try all of the issues at once, saving the parties the expense of litigating their case twice and the risk of inconsistent orders. In sum, relieving the Bankruptcy Court of the burden of evaluating Movants' claims and the dischargeability of same will serve the interests of justice, ensure uniformity in the administration of the laws against Debtor and the other defendants, and facilitate a consistent and streamlined bankruptcy process.

Finally, Movants have demanded a jury trial in the Civil Action, and Movants have a right to jury trial of these claims. Bankruptcy courts are not authorized to conduct jury trials absent express consent of the parties pursuant to 28 U.S.C. § 157(e). In general, where a party does not consent to a jury trial before a bankruptcy court and timely seeks a withdrawal of the reference, the automatic reference of the matter to the bankruptcy court must be withdrawn and the matter tried before a United States District Court. *Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 279 (M.D. Fla. 2002) ("[U]nless [defendant] consents to trial by jury before the bankruptcy court . . . this matter must be transferred to the district court.").

---

[2] All nondischargeable under 11 USC §523(a)(19).

8

## CONCLUSION

For the reasons stated above, the Court should withdraw the automatic reference to the United States Bankruptcy Court for the Southern District of Florida of the listed claims of Movants in this case and the adversary in this case [DE 93] (Case No. 18-01046) to challenge the dischargeability of those claims in deference to the adjudication of the claims pending in the United States District Court for the Southern District of Florida in Case No. 9:16-cv-81871-KAM between Movants and multiple defendants, including Debtor.

## RECORD OF THE CASE

Local Rule 5011-1(B) requires a designation of those portions of the record of the case or proceeding that will reasonably be necessary or pertinent to the District Court's consideration of this Motion. Movants designate their Motion to Lift Stay and Abstain from Adjudication of Validity and Amount of Claims and their Dischargeability [DE 62], Debtor's Response in Opposition [DE 81], and Movant's Complaint to Determine Nondischargeability [DE 93] in this bankruptcy proceeding and the entire docket in the Civil Action, Case No. 9:16-cv-81871-KAM in the United States District Court Southern District of Florida.

WHEREFORE, Movants respectfully request that the Court enter an order withdrawing the reference to the United States Bankruptcy Court for the Southern District of Florida of the listed claims of Movants in this case and the adversary proceeding in this case [DE 93] (Case No. 18-01046) to challenge the dischargeability of those claims in deference to the adjudication of the claims pending in the United States District Court for the Southern District of Florida in Case No. 9:16-cv-81871-KAM, and granting such other and further relief that the Court deems just and proper.

Dated this 28th day of February, 2018.

9

*/s/ Edward A. Marod*
**EDWARD A. MAROD**
Florida Bar No. 238961
Email: emarod@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
Telephone (561) 655-1980
Facsimile (561) 655-5677
*Attorney for Movants*

WPB_ACTIVE 8392149.1